## HOLT v. GREAT EASTERN CASUALTY CO.

No. 3171.    Decided May 2, 1918.    On Petition for Rehearing, July 3, 1918.    (173 Pac., 1168.)

1. INSURANCE—ACCIDENT INSURANCE—NOTICE OF INJURY AND LOSS—WAIVER—EVIDENCE. Undisputed evidence of conduct and course of procedure of insurer's agents, duly authorized to adjust insured's claim, *held* to indicate conclusively that noncompliance with "agreements" as to written notice of loss within ten days, and proof of loss within ninety days was waived by insurer. (Page 546.)

2. INSURANCE—ACCIDENT INSURANCE—STATEMENT IN APPLICATION—BREACH—WAIVER—EVIDENCE. Undisputed evidence of conduct and course of procedure of insurer's agents duly authorized to adjust insured's claim *held* to indicate conclusively that alleged breach of warranty concerning statements in the application for accident policy, was waived by insurer. (Page 546.)

3. INSURANCE—ACCIDENT INSURANCE—WAIVER OF CONDITIONS—EVIDENCE. Evidence that insured called by telephone local office of company shortly after accident, later called at local office and had a conversation with agent, who promised to look after insured's interests, and that insured at such time made a payment on the premium, was admissible on question whether company waived written notice of accident and loss, and alleged breach of warranty concerning statements in application. (Page 547.)

4. EVIDENCE—OFFER OF COMPROMISE. Letters of company, acknowledging receipt of insured's letters in regard to accident and loss, and advising him with respect to his claim, and blanks, receipts, and check inclosed in such letters, were not evidence of compromise, although printed receipt inclosed read, "In full compromise, payment, satisfaction," etc., and were admissible. (Page 548.)

5. INSURANCE—ACCIDENT—EVIDENCE—ADMISSIBILITY. In action against accident insurer for injury sustained on train, testimony of trainmen as to whether any complaint was made to them by any one at time of accident was properly rejected. (Page 551.)

6. APPEAL AND ERROR—ASSIGNMENT OF ERROR—SUFFICIENCY OF EVI-
DENCE. Court on appeal will not review evidence, where there is no
compliance with Comp. Laws 1907, Section 3284, and rule 26 33
Utah, XIII, 97 Pac. x, requiring particulars wherein evidence is
insufficient to be specified.[1] (Page 551.)

On Petition for Rehearing.

7. APPEAL AND ERROR—ASSIGNMENT OF ERROR—SUFFICIENCY OF EVI-
DENCE. When appellant contends there is no evidence, assignment is
sufficient, because of manifest inability to specify particulars; but,
where appellant concedes there is some evidence, particulars wherein
it is insufficient must be specified. (Page 555.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. H. M. Stephens*, Judge.

Action by Robert N. Holt against the Great Eastern Cas-
ualty Company.

Verdict for plaintiff. Motion for new trial overruled. De-
fendant appeals.

AFFIRMED.

*Hurd & Hurd* for appellant.

*Willey, Willey & Watkins* for respondent.

THURMAN, J.

Plaintiff, the holder of an accident policy in the defendant
company, brought this action to recover indemnity for per-
sonal injury alleged to have been received by him as the re-
sult of an accident while traveling on a passenger car of the
Denver & Rio Grande Railroad Company. It is alleged that
the accident occurred on the 12th day of May, 1913, at Spring-
ville, Utah.

---

[1] *Lyon* v. *Mauss*, 31 Utah, 283, 87 Pac. 1014; *Egelund* v. *Fayter*, 51
Utah, 579, 172 Pac. 313.

Plaintiff alleges, in substance, that while riding on the train as a passenger, at Springville station, and while standing on his feet, preparing to leave the car, without notice or warning the car suddenly and violently stopped, causing him to be thrown forward against the end of one of the seats of the car; that other passengers standing behind him at the time were likewise thrown forward, falling upon and against him, by means whereof he received severe injuries in his breast, ribs, and chest; that by reason of such injuries he was totally disabled and prevented from transacting any and every kind of business from the 12th day of May, 1913, to the 15th day of August of the same year, and was partially disabled from attending to his business from thence on to the 1st day of October next following. Plaintiff alleges that he gave due notice of the injury to the defendant, and did everything required of him by the terms of the policy to be by him performed, and likewise alleges waiver of notice and of noncompliance with the terms of the policy.

Defendant denies generally all of said allegations, except that plaintiff was a holder of a policy in the company. As a further defense it alleges noncompliance with certain "agreements" contained in the policy and a breach of warranty as to written statements made by plaintiff in the application upon which the policy was issued. The case was tried to a jury, verdict rendered for plaintiff, and motion for a new trial overruled. Defendant appeals.

Defendant assigns as error the admission of certain evidence over its objection, the exclusion of certain evidence offered by defendant, and that the court erred in overruling defendant's motion for a new trial; also that the verdict and judgment rendered thereon are against law.

The policy upon which the action was brought provides certain indemnities, which, so far as material here, are as follows:

"If such injuries shall from date of the accident continuously and totally disable and prevent the insured from transacting every kind of business, the company will pay for the entire period of such disability the weekly indemnity of $35.00.

"If such injuries shall from date of the accident, or immediately following total disability, continuously disable and prevent the insured from transacting a material part of the daily duties essential to his business, the company will pay for the period of such partial disability, not exceeding seven months, a weekly indemnity of $17.50.

"All the above amounts shall be doubled if such injuries shall be received while riding as a passenger in or on a public conveyance, including platform, steps, or running board thereof, provided by a common carrier for passenger service," etc.

The policy also, under the subhead, "Agreements," contains the following conditions upon which defendant relies:

"Written notice of death or of any injury or sickness or claim must be given to the company at its home office in New York City, or to a then authorized agent of the company in the city, town, or county in which the insured shall then reside, within twenty days from the date of the accident, or within ten days from the date of the beginning of disability from sickness, or immediately in case of accidental death, unless such notice shall be shown not to have been reasonably possible, in which case notice shall be given as soon as reasonably possible. Affirmative proof, under oath, of loss and of the company's liability hereunder, in form required by and satisfactory to it, must be furnished the company at its home office in New York City, as follows: * * * Within ninety days from the termination of loss of time or medical attendance," etc.

The evidence admitted over defendant's objection, and of which defendant complains, related generally to the questions as to whether the defendant had waived noncompliance with the "agreements" above quoted and the statements made in the application.

As we view these objections, it is not necessary to consider them in minute detail. The undisputed conduct and course of procedure on the part of defendant's agents 1, 2 duly authorized to adjust plaintiff's claim indicates conclusively to the mind of the court that noncompliance with

the agreements of the policy was waived by the defendant company. The same may be said as to the alleged breach of warranty concerning statements made in the application.

The evidence upon these questions tends to show that the accident occurred May 12, 1912; that the plaintiff called the local office of the company in Salt Lake City by telephone, shortly after the accident, and informed the person answering the call of the accident, and promised to call at the office within a few days; that he did not know who the person was that answered the call. This was done during the month of May, after the accident happened. The testimony was objected to, but was admitted on the condition that it be properly connected. The testimony further tends to show that on or about the 20th day of May plaintiff called at the local office of the company and had a conversation with one of the company's agents, in which the agent promised the plaintiff that he would look after plaintiff's interests concerning the accident and injury; that at that time plaintiff made a payment on the premium of the policy; that during the same month, after the accident, he wrote one or two letters to the home office at New York, and likewise at the same time wrote the local office, notifying them of the accident and injury; that during the next month, June, defendant's agent wrote the plaintiff, acknowledging receipt of the letters written by plaintiff, both to the home office in New York and the local office in Salt Lake City. In this letter the agent gives instructions and advice to plaintiff respecting his claim, and incloses blank forms to be filled out by plaintiff respecting his injuries, advising him to return the same, when filled out, to the company's office at the expiration of his disability; that in September following an agent of the company is authorized to adjust the claim of plaintiff against the defendant and undertakes to do so; that said agent certifies to having investigated the claim of plaintiff; that some time subsequent to this a check is presented to plaintiff for $52.50 as indemnity for partial disability for three weeks; that later the local office was directed to make an additional offer to plaintiff by way of adjustment, suggesting that a mistake

had been made in the first offer as plaintiff was entitled to double indemnity on account of the accident occurring while traveling as a passenger on a common carrier. These and other matters of evidence were offered by plaintiff and admitted by the court to prove that the company had waived strict compliance with the "agreements" respecting notice to the company and statements in the application alleged by defendant to be untrue. Such evidence undoubtedly tended to prove the waiver and the court did not err in admitting the same over defendant's objection.

Defendant, however, makes the further objection to the documentary evidence above referred to, especially the offer of settlement, on the alleged grounds that it was an offer made in an attempt to compromise the claim, and      4 was therefore inadmissible. It is undoubtedly true that an offer made by way of compromising a disputed claim is not ordinarily admissible to prove liability, because it is not an admission of a probative fact. For instance, a person may be quite positive that he is not in any manner liable for any part of an alleged claim, and yet be willing to pay a part of the amount claimed rather than incur the expense and annoyance incident to a lawsuit. So that it is quite manifest that a mere offer to pay something by way of compromise is in no sense evidence of liability. There is another reason why such offer is not admissible. The law favors the settlement of controversies between persons, and, if offers to compromise were afterwards, when the controversy is on trial, admitted to be proven, the effect would be to prevent compromise altogether. Persons having disputes in which they deny any liability would hesitate to make an offer of compromise, which afterwards in court might be relied on as an admission of liability.

Respondent, however, while not disputing the proposition of law that offers to compromise are not admissible in evidence, nevertheless denies that the exhibits objected to by defendant were in any sense connected with an offer to compromise the claim. This, therefore, renders it necessary to examine the exhibits to determine their nature and the circumstances un-

der which they were offered and admitted.   The exhibits ob-
jected to are grouped together as Exhibits H, J, K, M, and
L.   They were separately offered and separately objected to
by defendant, but they are so connected as to form parts of
one transaction.   Exhibit H is the letter of the company's
agent, above referred to, in which he acknowledges receipt of
letters both to the home office and the local office, and advises
plaintiff in respect to his claim, and incloses blank forms to
be filled out and returned at the expiration of his disability.
Exhibit J is a letter to plaintiff, inclosing check for $52.50
in payment of the claim; the writer stating that the company
has been advised to pay that amount.   The letter also was
accompanied by receipt, to be signed and returned by plaint-
iff to the company.   Exhibit K is a statement to the effect that
the plaintiff is allowed for three weeks' partial disability the
sum of $52.50, in full settlement of all claims against the
company.   Exhibit M is the form of the receipt above referred
to.   After acknowledging receipt of the amount, it reads:

"For the following purposes: In full compromise, pay-
ment, satisfaction, discharge, and release of any and all claims
that I myself, my heirs, executors, administrators, assigns or
beneficiaries now have or may hereafter have," etc., referring
to the accident and the number of the policy.

Exhibit L is the check above referred to for $52.50.   The
receipt is a stock form, printed, except blanks to be filled in,
and probably is the form in general use by the company.   It is
quite certain the form was not prepared specially for settle-
ment with the plaintiff.   The word "compromise," printed
therein, is therefore without particular significance concern-
ing the question under review.

We have not been able to find any matter in the record
which in any manner suggests that these documents were exe-
cuted and delivered as an offer to compromise the claim or
effectuate a compromise settlement.   The fact that the check
and the receipt accompanying it bear date November, 1913,
after the company had thoroughly investigated the claim, and
the further fact that Exhibit K is a statement that plaintiff
is allowed for three weeks' partial disability $52.50, all imply

that the proposed settlement was not an offer to compromise, but an offer to pay plaintiff what defendant, after thorough investigation, believed was justly due him. In other words, the whole group of exhibits, considered together with the other facts in the case, tends to show, not only a waiver of noncompliance with "agreements" which we have already considered, but likewise an admission of liability to the extent at least of $52.50. If it can be considered as an admission of liability to any extent, then it was admissible in evidence, for the defendant in its answer denied any and all liability whatever. But this is not all. There is another document to be considered in this connection, which was admitted without objection. This document is marked Exhibit O, and purports to be a letter from the superintendent of the claim department of the defendant company, addressed to its agent in Salt Lake City, December 17, 1913, after the offer of the check above referred to. The substance of the letter, Exhibit O, states that an error has been made in adjusting the plaintiff's claim; that on account of the accident having occurred on a common carrier, if plaintiff received an injury, he was entitled to double the amount that had been offered him; that he should receive $105, instead of $52.50, the amount allowed in the first adjustment. The writer of the letter requests the local agent to see if he can make an adjustment by allowing an additional sum of $52.50. In these transactions, whether considered singly or all together, we fail to find any earmarks of a compromise offer. If it was intended as a compromise, why find any specified period of disability? Why find the exact period of three weeks, and allow plaintiff therefor the exact sum provided in the policy for partial disability? Why afterwards come to the conclusion that a mistake had been made in the adjustment, and that he should be allowed double indemnity on account of the nature of the accident? It seems to the court there is no avoiding the conclusion that the defendant intended the offer as a settlement of what it was willing to concede, after a thorough investigation, was actually due and owing to the plaintiff.

The defendant, assuming that the exhibits referred to in-

dicate an offer of compromise, in support of its contention cites the following cases: *McKinney* v. *Carson,* 35 Utah, 180, 99 Pac. 660; 1 Jones, Ev. section 293, and cases cited; *Thomas* v. *Carey,* 26 Colo. 485, 58 Pac. 1096; 2 Wigmore, Ev. section 1061. Respondent, contending that the exhibits, in connection with the other evidence in the case, controvert the theory of a compromise offer, refers us to the following authorities: 2 Wigmore, Ev. p. 1232; *Bridge Co.* v. *Granger,* 4 Conn. 142; *Caledonia Fire Ins. Co. of Scotland* v. *Traub,* 86 Md. 86, 37 Atl. 782; *Brice* v. *Bauer,* 108 N. Y. 428, at p. 433, 15 N. E. 695, 2 Am. St. Rep. 454; *Teasley* v. *Bradley,* 110 Ga. 498, 35 S. E. 782, 78 Am. St. Rep. 113; *Gray* v. *Rollinsford,* 58 N. H. 253; *Brown* v. *Shields,* 6 Leigh (Va.) 440; *Stanford* v. *Bates,* 22 Vt. 546; *Cooper* v. *Jones,* 79 Ga. 379, 4 S. E. 916; *Bank* v. *Seymour,* 64 Mich. 59, 31 N. W. 140; *Person* v. *Bowe,* 79 Minn. 238, 82 N. W. 480; *Cole* v. *Cole,* 33 Me. 542, 16 Cyc. 948; and many others not necessary to enumerate. We are of the opinion that the facts fairly construed, bring the case within the law relied on by respondent. The trial court therefore, did not err in admitting the exhibits in evidence.

Appellant also assigns as error rulings of the court refusing to permit certain trainmen, operating the train at the time of the accident, to testify as to whether any complaint was made to them by any one at the time of the accident. We do not think that the fact, if it be a fact, that no complaint was made to trainmen, should be a determining factor in the slightest degree as to whether or not an accident happened or that somebody was injured. The testimony offered was properly rejected.

This disposes of all matters assigned as error material to be considered. But appellant in his brief contends, and also contended at the oral argument, that the evidence is insufficient to sustain the verdict. While the court is of the opinion that there is substantial evidence to sustain the verdict, it does not feel authorized to place its decision upon that ground. This question is not assigned as error, and for that reason the court cannot consider it. Rule 26 of

the practice of this court (33 Utah, xiii, 97 Pac. x) as far as material here, reads as follows:

"The appellant shall assign errors in writing, subscribed by himself or his counsel, and shall serve a copy thereof on the respondent or his counsel, and file the original with the clerk of this court within five days from the time of the filing of the transcript of the record on appeal. * * * When the alleged error is upon the ground of the insufficiency of the evidence to sustain or justify the verdict or decision, the particulars wherein the evidence is so insufficient shall be specified. The said assignments, or so much thereof relied upon, shall be set forth in the printed abstract, together with references to the pages in the transcript and abstract where the rulings and exceptions pertaining thereto appear. This rule shall go in effect and apply to all cases filed in this court on and after November 1, 1905."

If appellant intended to rely on insufficiency of the evidence as one of the grounds of appeal, the requirements of the rule above quoted were entirely disregarded. Were it not for appellant's brief filed in the case, the court would have no reason to believe insufficiency of the evidence was relied on as error. This is not a compliance with the rule. The rule is mandatory. It is even jurisdictional, in the sense that a compliance with its provisions is essential to the right to be heard as to any alleged error. The assignment of errors is the pleading in this court which defines the issues and asserts the claims upon which the appellant relies. It bears the same relation to the notice of appeal which the complaint in the trial court bears to the summons. If the summons has been served in a case in the trial court, and no complaint is filed in time, the action fails. There is nothing for the court to try. No judgment can be rendered, except a judgment dismissing the action. So it is in case of a failure to file and serve an assignment of errors in this court as required by the rule. It is true, where an attempt has been made to assign error, an amendment thereto may be allowed upon seasonable application, the same as to any other pleading; but, unless an error is assigned, it cannot be reviewed. This question is re-

viewed and determined in the case of *Lyon* v. *Mauss*, 31 Utah, 283, 87 Pac. 1014. It is true in that case no assignment of errors was filed at all, while here there is an assignment as to certain alleged errors; but the document is silent as to the insufficiency of the evidence to sustain the verdict. There is no specification of particulars wherein the evidence is insufficient. As to this matter it is just the same as if no assignment whatever had been filed.

We have heretofore during the present term had occasion to review this question, and declined to consider the evidence for the purpose of determining whether or not it was sufficient to sustain the findings. *Egelund* v. *Fayter*, 51 Utah, 579, 172 Pac. 313. We declined to review the evidence for the purpose named, for the same reason that we decline in the present case—because there was no compliance with rule 26; there was no specification of particulars in which the evidence was insufficient. Both the statutes and decisions of this court are cited in the case last referred to, and need not be repeated here. It should be understood and appreciated that rule 26 has its foundation in a positive statute of the state, one which is mandatory in terms and which has never been repealed. Comp. Laws Utah 1907, section 3284. Having its foundation in a positive statute and breathing as it does the very spirit of that statute, and supplying its place in the practice of the court, it should not be considered as merely directory, but as absolutely binding upon the court and the parties litigant. Unless the court and its officers steadfastly maintain the integrity and unimpeachability of rules of this character, it will be impossible to maintain orderly procedure and transact the business of the court. In the circumstances as here presented, we feel there is no alternative but to decline considering the evidence, with the view of making it a determining factor in deciding the case.

For the reasons above stated, the judgment of the trial court is affirmed. Respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.

On Petition for Rehearing.

THURMAN, J.

In its application for a rehearing appellant argues that the court misconceived the grounds relied on for a reversal of the judgment. It says, in substance, that insufficiency of the evidence was not assigned by it as error, nor was that the ground which its counsel intended to urge; that the errors assigned and relied on (aside from the other assignments disposed of by the court) were:

"(1) That the court erred in making its order overruling and denying defendant's motion for a new trial in said case; and (2) that the verdict and judgment rendered therein are against law."

It is true appellant did not in so many words assign insufficiency of the evidence as error but in substance and effect it did attempt to make such an assignment, and that too without specifying the particulars in which the evidence was insufficient. Appellant must admit (if it does not rely on insufficiency of the evidence) the two assignments referred to have no merit or standing. In rendering our former opinion we considered only the substance of appellant's contention. Nearly half of its able and comprehensive brief was devoted to a discussion of the insufficiency of the evidence and the law relating thereto. This was done without any specification whatever as to the particulars wherein the evidence was insufficient. We conceived, properly, as we believe, that this was a total disregard of rule 26. We were of the opinion the rule ought to be enforced both in letter and in spirit. We are still of that opinion. The contention that the rule may be applied where insufficiency of the evidence is specifically assigned as error but should not be applied where insufficiency is relied on, as in the case at bar, is without any merit whatever. The purpose and object of the rule, which need not be elaborated here are just as essential to be effectuated and carried out in a case of this kind as in the case where insufficiency is specifically assigned. This identical question has been determined

by this court in an exceedingly clear, lucid, and able opinion. *Blue Creek Land & Live Stock Co.* v. *Anderson,* 35 Utah, 61. The reasons for the rule are so ably and fully discussed in that opinion as to render further elaboration on our part wholly unnecessary.

Appellant relies on the opinion of this court by Mr. Justice Frick in *Railroad* v. *Board of Education,* 32 Utah at page 310. An examination of the record discloses that appellant in that case specifically assigned "insufficiency of the evidence to sustain the verdict of the jury or decision of the court, in that there was no evidence in the case showing or tending to show," etc. The court, under that assignment, held it to be its duty to look into the evidence to ascertain whether there was substantial evidence to support the judgment. That presents an entirely different question. When an appellant contends there is no evidence at all, the assignment must be sufficient because of his manifest inability to specify particulars. In fact, to say there is no evidence at all is a specification of particulars as perfect as can be made in such a case.

In the present case appellant says:

"It was not contended by the appellant, and is not now contended by us, that there was not some evidence sufficient to support a verdict for some amount."

In such a case, in the opinion of the court, to authorize an examination of the evidence to ascertain whether or not it is sufficient, the particulars wherein it is insufficient must be specified, whatever may be the form of the assignment. The opinion of Mr. Justice Frick, relied on by appellant, certainly does not support its contention.

The application for a rehearing is denied.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.